IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RAJ KAREE EDGE,                      )
                        Petitioner   )
                                     )
        vs.                          )    Civil Action No. 08-1009
                                     )    Chief Magistrate Judge Amy Reynolds Hay
ROBERT LAWLER; THE ATTORNEY          )
GENERAL OF THE STATE OF              )
PENNSYLVANIA,                        )
                    Respondents      )

## MEMORANDUM OPINION

Raj Karee Edge ("Petitioner"), a state prisoner, was convicted in a jury trial of first degree murder and conspiracy in the shooting death of Jason Faulk.  Petitioner has filed a federal habeas petition pursuant to Section 2254, attacking his convictions.  Unfortunately, the habeas petition is not a model of clarity.  However,  Petitioner does raise several trial court errors and several ineffective assistance of  counsel claims.  Because the state courts rejected most of the claims on the merits, and because Petitioner fails to show that the state courts' disposition of his claims was contrary to or an unreasonable application of United States Supreme Court precedent, his petition should be denied.  In addition, the state courts did not address some of the issues Petitioner raises herein because he did not properly raise the issues in the state court proceedings.  Accordingly, we find those issues to be procedurally defaulted and furthermore, we find that Petitioner has not carried his burden to show cause and prejudice or a miscarriage of justice in order to entitle him to have those issues addressed herein on the merits.

### Relevant Factual and Procedural History

The trial court recounted the facts underlying the conviction as follows:

In the early morning hours of October, 4, 1998, the appellant, Raj Karee Edge, (hereinafter referred to as "Edge"), John Johnson, (hereinafter referred to as "Johnson"), and Donald Thomas, (hereinafter referred to as "Thomas"), were in a number of bars in the Hill District section of the City of Pittsburgh. While inside one bar, Johnson received a telephone call from his girlfriend, Ebony. She told Johnson that a person by the name of Jason Faulk, (hereinafter referred to as "Faulk"), the homicide victim in this case, had been involved in the burglary of the residence shared by Johnson and Ebony. Edge, Thomas and Johnson then decided to make Faulk pay for the burglary by killing him. The three individuals agreed that they needed to secure more firepower. They then picked up a fourth male by the name of Ronald Williams, (hereinafter referred to as "Williams"), who brought with him a nine millimeter semi-automatic firearm.

The individuals then travelled [sic] to Johnson's neighborhood, the Arlington Heights Section of the City of Pittsburgh, where they thought Faulk might be found. At approximately 3:00 a.m. on October 4, 1998, the group was proceeding along Arlington Avenue when they spotted Faulk, walking along the street. Thomas stopped the car before Faulk noticed the group and a number of the individuals exited the vehicle. Williams and Johnson, each armed with their firearms, approached Faulk and began firing at him. The initial volley caused Faulk to fall to the ground on his hands and knees. A second volley of shots was fired at Faulk and then he went completely to the ground. The third volley of shots was fired by Edge while Faulk was lying on the ground.

The shooting of Faulk, was witnessed by Jackie Green, (hereinafter referred to as "Green"), a woman who lived directly across the street from the incident in an apartment. Green saw Johnson standing over Faulk and shooting him and then saw other individuals involved shooting at Faulk as well. Once the shooting stopped, Johnson ran over to the door of his building [i.e., the building wherein was the apartment Johnson and Ebony shared, which apartment Faulk had allegedly burglarized] opened the door and told the other individuals to give him the straps and bounce. (Trial Transcript at 700). Green testified that she was familiar with those terms and that Johnson was telling the other individuals to give him the guns and run. The individuals, in fact, gave Johnson the weapons. Johnson then went inside and the other individuals ran to the car and left. Green then saw Johnson in his apartment. Green called 911 and a number of police officers arrived on the scene. Faulk was found dead with seven bullet wounds in his body. Green told the officers that Johnson was one of the actors involved and indicated where his residence was located. Upon receiving consent to search the apartment from Ebony, the police recovered three handguns from underneath a mattress upon which Ebony's children were sleeping.

Based upon the investigation performed by City of Pittsburgh homicide detectives, Edge was identified as an individual who might have information regarding the shooting of Faulk and the detectives requested that he meet with them and discuss the incident. Edge agreed, and after properly being given the

2

necessary warnings and rights, Edge waived his rights and agreed to speak with the detectives and signed a waiver of rights form.  He then proceeded to detail his involvement in the shooting of Faulk and the circumstances surrounding the incident.  After making a number of corrections to the statement given to the homicide detectives, Edge adopted the statement with his signature.  As a result of this incident, Edge was charged with criminal homicide, criminal conspiracy, and carrying a firearm without a license.

A jury trial commenced in this Court on May 9, 2001 and Edge was convicted on all counts.  On September 5, 2001, Edge was sentenced to a mandatory life term of imprisonment for first degree murder and, in addition, was sentenced to thirteen and one-half to twenty-seven years of incarceration on Edge's conviction for criminal conspiracy and carrying a firearm without a license, said sentences to run consecutive to his life sentence.  Edge thereafter appealed to the Superior Court.. . .

Dkt. [9-3] at 2 to 4 (footnotes omitted). .

In the instant habeas filing, Petitioner raises the following claims:

GROUND ONE: Denial of Fifth Amendment – Petitioner did not knowingly waive his Miranda rights . . . .  Petitioner was not properly informed he was under arrest and charged with murder.

Dkt. [1] at 5.

GROUND TWO: Denial of a fair trial – Judge prevented Defense presentation of witness bias. . . . Trial Court sustained an objection to petitioner[']s questioning the bias of prosecution witness Jackie Green – questioning would reveal the witness['] testimony was [a] product of personal animus.

Dkt. [1] at 6.

GROUND THREE: Denial of a fair trial – Judge permitted testimony of deceased's mother, where prejudicial value [[which] was D.A. objective] outweighed its probative value. . . .

The deceased's mother [Mildred Faulk] was called to testify – the deceased was her son – and, that he was shot and killed.

Her testimony went far beyond that - and had the effect of prejudicing the jury against him – appealing to the emotions of the jury.

Dkt. [1] at 8.

3

> GROUND FOUR: Denial of Effective Assistance of Counsel . . .  Trial Counsel failed [to] investigate and properly prepare to impeach Jackie Green; failed to challenge [the] admission of an unrelated gun (25 automatic) into evidence; counsel failed to communicate a plea offer.

Dkt. [1] at 10.

> Ground Five:  - Reverse Side - . . . . Denial of full and fair opportunity to be heard on collateral attack.  This only ripened in the course of appellate [i.e., post conviction] litigation – and was raised as a state right to counsel  – and is a federal right to due process.

Dkt. [1] at 11.

Unfortunately, the Clerk's office failed to scan the reverse side of the page upon which Petitioner expanded upon Ground Five.  This error was only recently discovered.  The Court directed the Clerk's office to re-scan the original as a corrected habeas petition so as to include the reverse page that was erroneously not scanned.   The corrected habeas petition is Dkt. [17].[1]

---

[1]  The following is a quote of Petitioner's complete claim which he had raised on the reverse of the page as Ground Five:

> PETITIONER ATTEMPTED TO PRESENT ON COLLATERAL REVIEW, THE ISSUE OF TRIAL COUNSEL'S INEFFECTIVENESS FOR FAILING TO TIMELY COMMUNICATE A PLEA OFFER OF 10 TO 20 YEARS, THE SUPERIOR COURT RULES THIS ISSUE TO [sic] WAS WAIVED BECAUSE OF DIRECT APPEAL COUNSEL'S FAILURE TO TIMELY RAISE IT.  FURTHER RULING ON THE MERITS, DENYING RELIEF.

> THIS ONLY BECAME AN ISSUE DURING THE PENDENCY OF APPELLATE REVIEW AND COULD NOT BE ADDRESSED EARLIER.

> POST CONVICTION COUNSEL WAS PERMITTED TO WITHDRAW WITHOUT OBTAINING A FULL AND FAIR REVIEW OF PETITIONER'S ISSUES; (1) TRIAL COUNSEL'S FAILURE TO PROPERLY INVESTIGATE AND PREPARE FOR THE UNIQUE ISSUES DEVELOPED AT TRIAL, (A) INTRODUCTION OF A TWENTY-FIVE CALIBRE [sic] GUN UNRELATED TO THE CRIME CHARGED; AND 2) CHALLENGE THE TESTIMONY OF JACKIE GREEN, ON THE GROUNDS HER TESTIMONY WAS A PRODUCT MOTIVATED BY ILL WILL AND PERSONAL ANIMUS.

(continued...)

The Respondents filed their Answer to the habeas petition, Dkt. Nos. [8] to [9], as well as a supplemental answer, Dkt. [10].   The Respondents also caused the original State Court record to be transmitted to this Court.   All parties have consented to have the Magistrate Judge exercise plenary authority to enter final judgment.  Dkt. Nos. [3] & [12]

**AEDPA is applicable**

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) ("AEDPA"), which amended the standards for reviewing State court judgments in federal habeas petitions filed under 28 U.S.C. § 2254, was effective April 24, 1996.  Because petitioner's habeas petition was filed in the year 2008, AEDPA is applicable to this case.  Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state courts have reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state courts' disposition of that issue. See 28 U.S.C.§ 2254(d) and (e).

---

[1](...continued)
COUNSEL FAILED TO INVESTIGATE AND DEVELOP THE FACTS SURROUNDING THE PLEA OFFER, AND REBUTT [sic] THE ASSERTION THAT NO DEAL WAS OFFERED BECAUSE THE DECEASE'S [sic] MOTHER REFUSED IT.

COUNSEL'S WITHDRAWAL [during the PCRA proceedings] DENIED PETITIONER HIS DUE PROCESS RIGHT TO BE HEARD FAIRLY AND FULLY.

ANY ARGUMENT ADVANCED BY THE COMMONWEALTH ANY ISSUE IS BARRED BY AN ADEQUATE AND INDEPENDENT STATE PROCEDURAL GROUND, SHOULD BE EXCUSED AND COUNSEL'S ACTION DEEMED CAUSE; AS HE WAS PREJUDICED BY THE ISSUES NOT BEING FULLY DEVELOPED AND DETERMINED ON THEIR MERITS.

Dkt. [17] at 12.

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the Supreme Court has expounded upon the standard found in 28 U.S.C. § 2254(d).  In <u>Williams</u>, the Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: (1) where the State court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or (2) where that State court decision "involved an unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the United States."  <u>Id</u>. at 404-05 (emphasis deleted).  The Court explained the two situations in the following terms:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Williams</u>, 529 U.S. at 412-13.  The Court of Appeals for the Third Circuit has also elucidated the "contrary to" clause by noting that "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." <u>Werts v. Vaughn</u>, 228 F.3d at 197 (<u>quoting</u> <u>Matteo v. Superintendent, SCI-Albion</u>, 171 F.3d 877, 888 (3d Cir. 1999)(en banc)).  Moreover, it is Petitioner's burden to prove the State court decision is either contrary to or an unreasonable application of clearly established federal law. <u>See</u> <u>Matteo</u>, 171 F.3d at 888; <u>Werts v. Vaughn</u>, 228 F.3d at 197.

6

AEDPA also permits federal habeas relief where the State court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

**Discussion**

As a global matter, Petitioner failed to even argue let alone demonstrate that the state courts' adjudications of the claims he raised therein, which he also raises herein, were contrary to or an unreasonable application of then extant United States Supreme Court precedent.  For this reason alone, he fails to carry his burden to show entitlement to relief as to those claims. Downing v. Del Papa, 145 Fed.Appx. 578, 580 (9th Cir. 2005)("Downing fails to **argue** how the Nevada Supreme Court's judgment resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States")(emphasis added); Anderson v. Secretary for Dept. of Corrections, 462 F.3d 1319, 1325 (11th Cir. 2006)("Petitioner had not met his burden of showing the state courts' decisions were 'contrary to' or 'an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States.'");  Sepulveda v. U.S., 330 F.3d 55, 66 (1st Cir. 2003) (AEDPA requires state "petitioners to bear a different burden; they must demonstrate that the state court's adjudication of the claim 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'"); Laemmle v. Michaels, Civil Action No. 08-333, 2009 WL 2602065, at * 5 (W.D.Pa. Aug. 24, 2009("Petitioner has cited no federal Supreme Court precedent nor has he even argued that such a disposition is contrary to or an

unreasonable application of then extant federal Supreme Court precedent. For this reason **alone**, he fails to show that he merits relief under AEDPA.")(emphasis added).

As to Ground One, Petitioner claims the trial court erred in admitting his confession to participating in the killing at the trial.  The trial court conducted a suppression hearing, where both Petitioner and his mother (who accompanied Petitioner to the police station when he gave his confession) testified as well as the police officers who took Petitioner's confession.  The trial court apparently crediting the police officers' version of the events and not crediting the Petitioner's version of the events, made a finding that Petitioner was properly given his Miranda warnings and that he knowingly and voluntarily waived those rights.   The trial court rejected Petitioner's contention to the contrary.  Dkt. [9-3] at 4 to 5, as did the Superior Court.  Dkt. [9-4] at 3 to 4.  Petitioner does not argue that the state courts' disposition of this suppression claim is contrary to or an unreasonable application of federal Supreme Court law.  Nor does this court find the state court dispositions to be such.  Neither is the state courts' adjudication of this claim an unreasonable determination of the facts.  As such, this claim fails to afford Petitioner relief.

We turn next to Ground Two, wherein Petitioner claims he was denied a fair trial when the trial court sustained an objection by the prosecution as to a question directed at Jackie Green, which sought to elicit that she disliked John Johnson, the boyfriend of Ebony and a co-conspirator of Petitioners in the murder of Jason Faulk.  The Respondents argue that this claim was never presented as a claim of federal constitutional violation but merely as a claim of state evidentiary law.  To the extent that they are correct, any federal substantive due process claim of fundamental unfairness would be procedurally defaulted and Petitioner has not shown cause or

prejudice for failing to raise this as a federal issue in the State Courts.[2]  Nor on this record, could

Petitioner show a miscarriage of justice so as to overcome the procedural default.[3]

In the alternative, the Superior Court addressed this claim, finding, first, that the evidence

of Ms. Green's dislike of Mr. Johnson was not relevant to her testimony regarding Petitioner's

role in the crime and so inferentially not admissible.  Dkt. [9-4] at 5 ("Green's bias against

_____

[2]  Petitioner does seem to argue cause and prejudice. Dkt. [17] at 12.  Compare Dkt. [17] at 12 with Dkt. [9-7] at 9 to 11 (Petitioner's pro se allocatur petition to the Pennsylvania Supreme Court after PCRA appeal to the Superior Court had concluded).  However, the cause he seems to argue is that PCRA counsel was ineffective for failing to properly raise issues.  See, Dkt. [17] at 12 ("Any argument advanced by the Commonwealth [that] any issue is barred by an adequate and independent state procedural ground, should be excused and counsel's actions deemed cause; as he [i.e., Petitioner]  was prejudiced by the issues not being fully developed and determined on their merits." (capitalization changed).  To the extent that Petitioner is resting his claim of cause on the fact of his PCRA counsel's alleged ineffectiveness, such a claim fails because a habeas petitioner cannot establish cause in federal court by pointing to the ineffectiveness of counsel where, (as here, in the PCRA proceedings), there is no federal constitutional right to counsel.  Coleman v. Thompson, 501 U.S. 722, 752 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.")(citations omitted);  Hull v. Freeman, 991 F.2d 86, 91 (3d C ir. 1993) ("Under Coleman, ineffective assistance of post-conviction counsel cannot constitute 'cause' because the Sixth Amendment does not entitle a defendant to post-conviction counsel").  Neither is there a substantive due process right to counsel in post conviction proceedings. Jacobs v. McDaniel, 139 F.3d 905 (Table); 1998 WL 78440, at *1 (9th Cir. 1998)("Jacobs' claim that he was denied due process because the state habeas court refused to appoint counsel at the evidentiary hearing fails for lack of a right to counsel in state collateral proceedings."); Gibson v. Public Advocacy Dept., 35 F.3d 565 (Table), 1994 WL 462160 at *2 (6th Cir. 1994)("Similarly, neither the Due Process Clause of the Fourteenth Amendment nor the equal protection guarantee of 'meaningful access' to the courts requires the defendants to appoint counsel for Gibson [in state post conviction proceedings]. See Murray v. Giarratano, 492 U.S. 1, 7 (1989). Thus, it is beyond a doubt that Gibson has no federal constitutional right to counsel . . . ."); Pursell v. Horn, 187 F.Supp.2d 260, 373 (W.D. Pa. 2002)(holding in a death penalty case that "the due process clause does not require counsel for state post-conviction proceedings, whether state law requires such counsel or not.").

[3]  Simpson v. Sparkman, 172 F.3d 49 (Table), 1998 WL 869967, *4 (6th Cir. 1998) ("Therefore, the burden is on the defendant at this stage to make 'a colorable showing of factual innocence' in order to be entitled to the 'fundamental miscarriage of justice' exception"); Cross v. Cody, 25 F.3d 1056 (Table), 1994 WL 164592, at *2 (10th Cir. 1994) ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate the failure to consider the claims will result in a fundamental miscarriage of justice.").

Johnson was not relevant in Appellant's trial."). Second, the Superior Court determined that any error in the exclusion of this evidence was harmless. Dkt. [9-4] at 4 to 5. Petitioner fails to even argue that this disposition was contrary to or an unreasonable application of federal Supreme Court precedent. Nor do we find it to be such. See Neder v. United States, 527 U.S. 1, 18 (1999) ("The erroneous admission of evidence in violation of the Fifth Amendment's guarantee against self-incrimination, and the erroneous exclusion of evidence in violation of the right to confront witnesses guaranteed by the Sixth Amendment are both subject to harmless-error analysis under our cases")(citations omitted). Even if we were to review this issue *de novo*, we would, like the Superior Court, conclude that the exclusion of this evidence, (assuming, solely for the sake of argument such exclusion violated Petitioner's right to fundamental fairness guaranteed by substantive due process), was harmless, in light of Petitioner's own confession and the other evidence of his guilt. Accordingly, this issue does not merit Petitioner relief.

We next take up Ground Three, wherein Petitioner contends that the trial court denied him fundamental fairness and violated substantive due process, when the trial court permitted Jason Faulk's mother to take the stand to testify that her son was killed.

Again, the Respondents argue that this issue was presented solely as one of state law evidentiary error and not as a claim of denial of fundamental fairness in violation of substantive due process. Dkt. [8] at 13 to 14; 17. To the extent that they are correct, any claim of substantive due process violation in the admission of Ms. Faulk's testimony would be procedurally defaulted and Petitioner has made no adequate showing of cause and prejudice nor has he shown a miscarriage of justice.

In the alternative, the trial court found that this evidence by Ms. Faulk was relevant to establish that Jason Faulk had been killed and further found that this evidence was in no way prejudicial and hence, no error occurred.  Dkt. [9-3] at 6 to 7.  The Superior Court found that the trial court did not err in admitting this evidence.  See Dkt. [9-4] at 6 ("'The Commonwealth has the burden of proving the guilt of the defendant by whatever material evidence it can muster.' *Id*.  Accordingly, the trial court was not obligated to force the Commonwealth to accept the stipulation" which Petitioner's counsel offered, i.e., agreeing to stipulate that Jason Faulk was dead).   The Superior Court then held in the alternative that even if it were error to admit the testimony of Jason Faulk's mother, the error "was harmless as an abundance of evidence existed to support Appellant's conviction, including his own signed confession."  Dkt. [9-4] at 6.

Petitioner does not argue that the state courts' disposition of this claim was contrary to or an unreasonable application of then extant federal Supreme Court precedent.  Nor do we find it to be such.

In the alternative, even if we were to review this issue *de novo*, it affords Petitioner no relief.  His claim is that he was denied fundamental fairness in his trial due to the admission of Ms. Faulk's testimony.  We have reviewed that testimony in the trial transcript which consists of less than three pages.   Petitioner has not sustained his burden to show that he was denied fundamental fairness in his trial based upon Ms. Faulk's testimony.

A claim that one was denied substantive "due process" is a claim that one was denied "fundamental fairness."  See Riggins v. Nevada, 504 U.S. 127, 149 (1992)("We have said that 'the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial,' *Spencer v. Texas*, 385 U.S. 554, 563-564 (1967)[.]");  Lisenba v. California, 314 U.S. 219, 236

(1941) ("The aim of the requirement of due process is . . . to prevent fundamental unfairness");

Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985) ("In order to prevail on a claim that an . . . error

deprived the defendant of due process under the Fourteenth Amendment he must show that the

error was so pervasive as to have denied him a fundamentally fair trial").  Because the guideposts

for decision making under the rubric of due process are lacking, the Supreme Court has

cautioned that

> In the field of criminal law, we "have defined the category of infractions that
> violate 'fundamental fairness' very narrowly" based on the recognition that,
> "[b]eyond the specific guarantees enumerated in the Bill of Rights, the Due
> Process Clause has limited operation." Dowling v. United States, 493 U.S. 342,
> 352 (1990). The Bill of Rights speaks in explicit terms to many aspects of
> criminal procedure, and the expansion of those constitutional guarantees under the
> open-ended rubric of the Due Process Clause invites undue interference with both
> considered legislative judgments and the careful balance that the Constitution
> strikes between liberty and order.

Medina v. California, 505 U.S. 437, 443 (1992)(some citations omitted).

     "A trial is fundamentally unfair if there is a reasonable probability that the verdict might

have been different had the trial been properly conducted." Foy v. Donnelly, 959 F.2d 1307,

1317 (5th Cir. 1992) (internal quotation marks omitted).  Where the evidence of guilt is so strong

that there is no reasonable probability that the verdict might have been different, errors, if any

were committed, could not deny the defendant fundamental fairness.  See, e.g., United States v.

Copple, 24 F.3d 535, 547 n.17 (3d Cir. 1994) ("To the extent any of the incidents constituted

error, we believe that in light of the strong evidence of guilt, the errors were harmless and did not

deprive Copple of a fundamentally fair trial.").  Here, given the overwhelming evidence of

Petitioner's guilt, including the eyewitness testimony of Ms. Green and Petitioner's own signed

confession, we find that Petitioner has not established that there was "a reasonable probability

that the verdict might have been different had the trial been properly conducted." <u>Foy v.</u>

<u>Donnelly</u>, 959 F.2d at 1317.   Accordingly, this issue affords Petitioner no relief.

Next, we consider, Petitioner's Ground Four.  In Ground Four, Petitioner claims that his

trial counsel was ineffective for the following reasons:  failing to investigate and properly prepare

to impeach Jackie Green; failing to challenge the admission into evidence of a .25 caliber

automatic gun; and failing to communicate a plea offer.

The Respondents point out that Petitioner failed to properly raise the claims that counsel

was ineffective for failing to impeach Jackie Green and failing to challenge the admission of the

.25 caliber gun into evidence.  Petitioner does not contend otherwise and our review of the record

supports the Respondents' position.   <u>See</u>, <u>e.g.</u>, Dkt. [9-3] at 17 (Direct Appeal Brief to the

Superior Court);[4] Dkt. [9-5] at 18 (the amended counseled PCRA petition);[5] Dkt. [9-6] at 5.[6]

_____

[4]  The only issues raised on direct appeal to the Superior Court were as follows:

1.  Whether the trial court erred when it denied the defendant's motion to suppress statements given to the police when the statements were not made voluntarily, defendant did not knowingly or voluntarily surrender his right to remain silent, and the statements were a product of custodial interrogation without adequate and complete Miranda warnings being given? . . . .

2.  Whether the trial court erred when it sustained the objection of the commonwealth [sic] to questioning by the defense of Jacqueline Green relevant to her bias against John Johnson? . . .

3.  Whether the trial court erred when it admitted testimony of Mildred Faulk, the mother of the deceased, when its prejudicial value clearly outweighed its probative value? . . .

4.  Whether the trial court erred when it denied defense counsel's request for a [jury] charge of involuntary manslaughter?

Dkt. [9-3] at 17.

[5]  The sole issue raised in the counseled PCRA petition was that "Attorney Dietz [i.e., Trial counsel] was ineffective – in violation of Article I, Section 9 of the Pennsylvania Constitution and the

(continued...)

From our review of the original state court record, it appears that Petitioner did raise these two claims of trial counsel's alleged ineffectiveness in his original un-counseled PCRA petition, however, those claims were abandoned in the counseled-amended PCRA petition and also on appeal to the Superior Court and, hence waived under state law and procedurally defaulted under federal law.[7]  We also note that Petitioner attempted to revive these waived claims in his pro se petition for allowance of appeal field after his PCRA counsel was permitted to withdraw by the Superior Court.  Dkt. [9-7] at 9.  However, such cannot rescue his claims from being procedurally defaulted.   Sistrunk v.Vaughn, 96 F.3d 666, 671 n.4 (3d Cir. 1996) ("the rules [of

---

[5](...continued)
Sixth and Fourteenth Amendments to the United States Constitution provisions – for failing to inform Defendant of or advise him on a plea offer which the Defendant would have accepted had he been timely informed thereof." Dkt. [9-5] at 18.

[6]  The sole issue raised on appeal to the Superior Court from the PCRA Court's denial of relief was as follows: "Attorney Dietz [i.e., Trial counsel] was ineffective – in violation of Article I, Section 9 of the Pennsylvania Constitution and the Sixth and Fourteenth Amendments to the United States Constitution provisions – for failing to inform Defendant of or advise him on a plea offer which the Defendant would have accepted had he been timely informed thereof."  Dkt. [9-6] at 5.

[7]  Thomas v. Elash, 781 A.2d 170, 176 - 77 (Pa. Super. 2001) ("Although Appellant may have preserved the issues raised in his post trial motions by mailing the motions within 10 days of the verdict, he has now waived those issues by failing to include them in his brief to this Court. . . .  Having failed to properly raise and address the issues in his brief, Appellant has precluded our review of his substantive claims."); Godfrey v. Patrick, No. CIVA 05-1106, 2006 WL 3692598, at *11  (W.D.Pa., Dec. 12, 2006)("Because this rule of waiver [for failing to raise an issue in the Superior Court] was consistently applied, at least since 1992 and thereafter up to the time Petitioner filed his appeal brief in the Superior Court, i.e., October 29, 2003, it constitutes an 'adequate' state procedural rule for purposes of procedural default" and the Court concluded that petitioner procedurally defaulted his claim )(footnote omitted); Pelzer v. Vaughn, No. Civ.A.  92-0091, 1992 WL 95915, at *5 (E.D. Pa. April 16, 1992) ("If an issue has once been raised [in the state court of first instance], but was not pursued to the higher courts, it is deemed waived, and further litigation on that issue will not be heard [in a federal habeas court] unless a petitioner can demonstrate cause and actual prejudice, or show that failure to consider the claims would result in a fundamental miscarriage of justice.  Here, petitioner waived this claim by not pursuing it the first time he raised it, in his first PCHA petition.  He tried to avoid this waiver by claiming ineffective assistance of his first PCHA counsel in his third PCHA petition, yet that issue was waived as well, by not having been raised in his petition for leave to appeal to the state supreme court.") (citations omitted).

14

Pennsylvania's appellate procedure] dictate that an issue raised at the trial level but not preserved

on appeal will  not be considered by any subsequent appellate court."); Commonwealth v. Agie,

296 A.2d 741, 741 (Pa. 1972)("We have consistently held that issues not raised in the court

below are waived and cannot be raised for the first time on appeal to this Court.")(citations

omitted).   Accordingly, we find that Petitioner has procedurally defaulted the claims of his trial

counsel's alleged ineffectiveness for failing to (1) investigate and properly prepare to impeach

Jackie Green and (2) for failing to challenge the admission into evidence of a .25 caliber

automatic gun into evidence.  Petitioner has not persuasively demonstrated cause and prejudice

for such a default.  Nor is any apparent from the record.  The only claim he would seemingly now

have is a claim that his PCRA counsel was ineffective for failing to raise these claims of trial

counsel's alleged ineffectiveness,[8] and as noted earlier, it appears that he does make such a claim

---

[8] In this regard, we note that Petitioner's trial counsel was permitted to withdraw after the trial and the court appointed Petitioner new counsel for purposes of the direct appeal.  At the time of the filing of the appellate brief by the new counsel, i.e., May 16, 2003, Dkt. [9-2] at 39, with new counsel in the person of Attorney Narvin, the new rule of Commonwealth v. Grant, 813 A.2d 726 (Pa. 2002), was applicable.  Grant announced a new rule in Pennsylvania that stated criminal defendants need not raise claims of trial counsel's ineffectiveness until the PCRA stage.  The earlier rule was announced in Commonwealth v. Hubbard, 372 A.2d 687 (Pa. 1977), *overruled by*, Commonwealth v. Grant, 813 A.2d 726 (Pa. 2002).  Under Hubbard, the rule was that one was required to raise the ineffectiveness of counsel at the first opportunity new counsel had, or the issue of the prior counsel's ineffectiveness was waived.  As a consequence of this rule, if the new counsel failed to do so, the only proper way under State law to reach the first counsel's ineffectiveness was to "layer" the claims of ineffectiveness, i.e., to claim that new counsel (typically appellate counsel) was ineffective for failing to raise first (typically trial) counsel's ineffectiveness.   All this changed with the decision in Commonwealth v. Grant, which held that claims of ineffectiveness of trial counsel should not be raised until PCRA proceedings and when raised then, such claims could be raised directly and not via a layered ineffectiveness claim.  The Grant decision went further and held that this new rule of waiting to raise ineffectiveness of trial counsel until the PCRA stage, applied retroactively to all cases then pending on direct appeal.  Petitioner's case was, at the time of the Grant decision, pending on direct appeal as the Superior Court did not decide the appeal until February 4, 2004.  Hence, Petitioner was no longer subject to the old Hubbard rule, requiring that he raise his claims of trial counsel's ineffectiveness via a layered claim.  However, the Grant decision did nothing to the State rules of waiver 1) that issues not raised in a counseled PCRA petition were waived and/or 2)  issues raised in the PCRA proceedings but abandoned on appeal were waived.

(continued...)

of cause based upon his PCRA counsel's performance.  Dkt. [9-7] at 9 to 11.  However, as we

saw above, Petitioner has no federal right to counsel at the PCRA stage and the rule is where

there is no federal right to counsel, counsel's ineffectiveness at that stage cannot serve as cause to

excuse a procedural default.  Coleman v. Thompson, 501 U.S. 722, 757 (1991) ("Because [the

petitioner] had no right to counsel to pursue his appeal in state habeas, any attorney error that led

to the default of [his] claims in state court cannot constitute cause to excuse the default in federal

habeas.");  Hull v. Freeman, 991 F.2d 86, 91 (3d Cir. 1993) ("Under *Coleman*, ineffective

assistance of post-conviction counsel cannot constitute 'cause' because the Sixth Amendment

does not entitle a defendant to post-conviction counsel").  Moreover, Petitioner has not even

argued nor could he successfully argue for a miscarriage of justice.  Hence, having procedurally

defaulted these two claims of trial counsel's ineffectiveness, and having failed to show either

cause and prejudice or a miscarriage of justice, these two claims of trial counsel's putative

ineffectiveness cannot afford Petitioner relief.

     The next issue we consider is the issue of trial counsel's alleged ineffectiveness for

failing to communicate a plea offer to Petitioner.  This issue was raised in the PCRA

proceedings, and indeed was the sole issue raised in the amended PCRA petition and the sole

issue raised on appeal to the Superior Court from the PCRA Court's denial of relief.  The PCRA

---

        [8](...continued)
This is precisely the case here.  It appears that in the State Court Record, there is a pro se PCRA petition
that raised the two claims of ineffective assistance of trial counsel based upon failure to properly
investigate so as to impeach Ms. Green and secondly based upon the failure to object to the introduction
of the .25 caliber weapon.  However, such claims of ineffectiveness were not raised in the amended-
counseled PCRA petition nor were they raised in the PCRA appeal to the Pennsylvania Superior Court.
Hence, such claims were waived in the State Courts.  The only cause Petitioner could claim is PCRA
counsel's ineffectiveness for failing to raise these claims.  However, where there is no federal
constitutional right to counsel, ineffectiveness of counsel at that stage cannot serve as cause.  Hull.  Nor,
on this record, could Petitioner establish a miscarriage of justice.

trial court conducted a hearing on this claim where both Petitioner and Petitioner's trial counsel testified. Petitioner's trial counsel testified that no plea offer was made. The PCRA court credited the testimony of Petitioner's trial counsel and found as a fact that no plea offer had been made. Dkt. [9-5] at 34 to 35. Specifically, the PCRA trial court found that "[w]hen reviewing the record and the testimony in this particular proceeding in light of Edge's contention that he would have accepted a plea agreement had it been communicated to him, it is clear that there were no plea negotiations ever undertaken [because Jason Faulk's family objected and the prosecutor acceded to the Faulk family's objections] and, accordingly, there was no plea agreement ever offered to Edge's counsel which should have been communicated to him. Since there was no plea agreement. . . ." Dkt. [9-5] at 35 to 36. The Superior Court affirmed. Specifically, the Superior Court determined that "since the PCRA court found that no plea offer had been made and since the record testimony supports this conclusion, we must likewise find that no plea offer was made and that, therefore, there can be no finding of ineffectiveness. Appellant's underlying issue is wholly without merit." Dkt. [9-7] at 5. Petitioner does not argue that this disposition is contrary to or an unreasonable application of federal Supreme Court precedent, nor does he explicitly argue that this is an unreasonable determination of the facts. This court finds that the state courts' adjudication of this claim was not contrary to or an unreasonable application of federal Supreme Court precedent. Werts v. Vaughn, 228 F.3d 178, 202 (3d Cir. 2000) ("counsel cannot be deemed ineffective for failing to raise a meritless claim"). Nor did the state courts' adjudication involve an unreasonable determination of the facts in light of the evidence presented at the PCRA hearing and in light of the credibility determinations made by the PCRA trial court. Accordingly, this issue affords Petitioner no relief.

Lastly, we take up Ground Five. It is not entirely clear what Petitioner is arguing in Ground Five.  However, he appears to be arguing primarily that he was denied "a full and fair opportunity to be heard on collateral attack.  This only ripened in the course of appellate litigation – [i.e., appellate litigation of the PCRA petition, wherein his PCRA counsel sought to withdraw upon appeal] and was raised as a state right to counsel – and is a federal right to due process."  Dkt. [1] at 11, ¶ 13 (a).   Petitioner expounds upon this theme when he contends that "post conviction counsel was permitted to withdraw without obtaining a full and fair review of Petitioner's issues"  and further contends that PCRA "counsel failed to investigate and develop the facts surrounding the plea offer, and rebutt [sic] the assertion no deal was offered because the decease's mother refused it.  Counsel's withdrawal [at the appeal stage of the PCRA proceedings] denied petitioner his due process right to be heard fully and fairly."   Dkt. [17] at 12 (capitalization changed).

Hence, it appears that Petitioner seeks in Ground Five to raise a claim that his PCRA proceedings were fundamentally unfair because he could not successfully raise all of the claims he had wanted to and that such denial of fundamental fairness was due, at least in part, to the ineffective assistance of PCRA counsel.  None of this affords Petitioner relief because the rule is errors in the course of a state's post conviction process simply are not cognizable in a federal habeas petition.  Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998)("The federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's *collateral* proceeding does not enter into the habeas calculation. . . . Federal habeas power is 'limited ... to a determination of whether there has been an improper detention by virtue

18

of the state court judgment.'"); Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988); Hallmark

v. Johnson, 118 F.3d 1073, 1080 (5th Cir.), cert. denied, Johnson v. Monroe, 522 U.S. 1003

(1997); Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir.1995) ("An attack on a state habeas

proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an

attack on a proceeding collateral to the detention and not the detention itself.") (internal

quotation marks omitted); Roe v. Baker, 316 F.3d 557, 571 (6th Cir. 2002) ("relief may not be

granted to a habeas petitioner for alleged deficiencies in a state's post-conviction procedure");

Jolly v. Gammon, 28 F.3d 51, 54 (8th Cir. 1994); Franzen v. Brinkman, 877 F.2d 26, 26 (9th Cir.

1989); Hopkinson v. Shillinger, 866 F.2d 1185, 1219-20 (10th Cir. 1989), on reh'g, 888 F.2d 1286

(1989), overruling on other grounds recognized by Davis v. Maynard, 911 F.2d 415, 417 (10th

Cir. 1990); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987). Contra Dickerson v.

Walsh, 750 F.2d 150, 153 (1st Cir. 1984).   Accordingly, Ground Five affords Petitioner no relief.

As none of the grounds Petitioner raises affords him relief, the petition will be denied.

**Certificate of Appealability**

A certificate of appealability ("COA"), which is a prerequisite for allowing an appeal to a

Court of Appeals, should not be issued unless the petitioner "has made a substantial showing of

the denial of a constitutional right."  28 U.S.C. § 2253 (c)(2).  A "substantial showing" requires a

habeas petitioner to show that "jurists of reason would find it debatable whether the petition

states a valid claim of the denial of a constitutional right[.]"  Slack v. McDaniel, 529 U.S. 473,

484 (2000). See also Walker v. Government of The Virgin Island, 230 F.3d 82, 89-90 (3d Cir.

2000).

Applying this standard to the instant case, the court concludes that jurists of reason would not find it debatable whether the petition fails to state a valid claim of the denial of a constitutional right.  Accordingly, a certificate of appealability should be denied.

An appropriate Order follows.

/s/ *Amy Reynolds Hay*
Chief United States Magistrate Judge

Dated: 12 November, 2009

cc:    Raj Karee Edge
       EU-9018
       SCI Huntingdon
       1100 Pike Street
       Huntingdon, PA 16654

       Counsel of Record via CM-ECF